UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
MICHAEL D'AREZZO,                )
        Plaintiff,               )
                                 )
v.                               )      CIVIL ACTION
                                 )      NO. 09-cv-10019-DPW
UNITED STATIONERS,               )
        Defendant.               )
                                 )
```

<u>MEMORANDUM AND ORDER</u>
June 23, 2010

The case presents allegations of employment discrimination. Plaintiff Michael D'Arezzo, a Massachusetts resident, seeks damages from his employer, Defendant United Stationers Supply Co. ("United Stationers"), a wholesale distributor of business products headquartered in Illinois, for retaliation, hostile work environment, and failure to accommodate a disability under Chapter 151B of the Massachusetts General Laws. United Stationers has moved for summary judgment on all counts of the complaint.

## I. BACKGROUND[1]

Beginning in 1997, D'Arezzo was employed as a Distribution Worker in United Stationers' Distribution Center in Woburn, Massachusetts (the "Woburn Distribution Center").  D'Arezzo worked in the Shelf Department on the second floor of the Woburn Distribution Center with approximately forty-four employees who worked in shifts with staggered start times over a twenty-four hour period.  The Distribution Workers in the Shelf Department were responsible for picking products for orders sold in individual quantities, as opposed to bulk orders, and placing them on a conveyer system for packing.

---

[1] Under Local Rule 56.1, "[m]aterial facts of record set forth in the statement [of the material facts of record] required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties." Because D'Arezzo failed to file a statement of facts with his opposition memorandum in accordance with the local rule, I accept as true the facts set forth in United Stationers' statement (Doc. No. 17).  *See Stonkus v. City of Brockton Sch. Dep't*, 322 F.3d 97, 102 (1st Cir. 2003).

In the narrative of his opposition memorandum, D'Arezzo states that he "agrees with most of [United Stationers'] portrayal of the parties, the description of the work area and even the relationship of the Plaintiff and Ms. O . . . prior to the November 10, 2006 incident."  He says in that opposition that the parties' point of contention centers on United Stationers' description of the events that occurred on November 10, 2006 and the subsequent facts.  He fails, however, properly to marshal facts of record to demonstrate any genuine issue of material fact regarding the contentions of the parties.

Ms. O,[2] another Distribution Worker in the Shelf Department, was already employed at United Stationers when D'Arezzo started working there in 1997.  D'Arezzo and Ms. O initially had an amicable relationship, and would joke and talk about non-work issues.

## A. *The November 10, 2006 Incident*

On Friday, November 10, 2006, at approximately 11:00am, just before D'Arezzo's shift began, both D'Arezzo and Ms. O were in the employee locker room.  While he was putting on his shoes, a co-worker called out to Ms. O, "Oh, my god, he's looking at your ass."  D'Arezzo claims he felt something strike his arm and knock it into the lockers, and when he turned around, he saw Ms. O waving her fist in his face.  Ms. O said, "I ought to smack you;" D'Arezzo thought she was joking and replied "Oh, baby."  Turning red, Ms. O told D'Arezzo, "You won't think it's funny when I knock your teeth out," and D'Arezzo realized she was serious. Then Ms. O started screaming that she was sick and tired of his sexual harassment, and stormed out of the locker area.

## B. *The Investigation*

After this incident, D'Arezzo was embarrassed that his co-workers had witnessed Ms. O's outburst.  Nevertheless, D'Arezzo worked his full shift that day.  He did not speak to anyone about

---

[2] For privacy reasons, the parties refer to D'Arezzo's co-worker as Ms. O.

3

the incident that day or over the weekend, and he did not see a
doctor.

Ms. O, however, complained to her supervisor on the day of
the incident that D'Arezzo had sexually harassed her in the
locker area.  Her supervisor referred her to Human Resources,
which immediately commenced an investigation by interviewing Ms.
O, D'Arezzo, and other employees who were in the locker area when
the incident occurred.  After its investigation, Human Resources
concluded that no sexual harassment violation had occurred on
November 10, 2006.  D'Arezzo was notified of that result in a
written memorandum from Human Resources dated November 14, 2006;
attached to that memorandum was a copy of the company's Non-
Harassment and Anti-Retaliation Policy.

After November 10, 2006, D'Arezzo never spoke to Ms. O
again, even though they both continued to work in the Shelf
Department.  Their shifts overlapped for the two-and-a-half hour
period between 11:00am (when D'Arezzo began his shift) and 1:30pm
(when Ms. O's shift ended).

## C. Offers to Change D'Arezzo's Schedule and Department

Over the next few weeks, D'Arezzo saw Ms. O multiple times
during their overlapping shifts.  Several days after the November
10 incident, D'Arezzo saw Ms. O working across from him on the
conveyor belt.  He started shaking, stuttering, felt dizzy, and
his eyes began watering.  D'Arezzo tried but could not find his

4

manager; he instead went to Human Resources and met with Mark Karolidus to explain the situation.  D'Arezzo claims that Karolidus told him, "You are just going to have to deal with it." D'Arezzo tried to "deal" with the situation for a couple of weeks, but had the same reaction whenever he saw Ms. O.  He went to see a doctor, who diagnosed him with anxiety attacks.

Because the sight of Ms. O triggered his anxiety attacks, D'Arezzo began to shield his eyes whenever he saw her.  On December 12, 2006, D'Arezzo complained that Ms. O was working in his area of the Shelf Department.  That same day, Ms. O complained that D'Arezzo shielded his eyes whenever he encountered her in retaliation for making the sexual harassment complaint in November.  Human Resources spoke with D'Arezzo about shielding his eyes, and for the first time, he mentioned that Ms. O struck him during the November incident.  Human Resources investigated, but was unable to corroborate, D'Arezzo's claim that Ms. O struck him.

D'Arezzo subsequently provided Human Resources with a note from Danielle Paquette, a nurse practitioner, dated December 14, 2006, stating that D'Arezzo "has been followed at our office for anxiety related to co-worker at work on 12/1/06.  When [he] is experiencing anxiety/panic attacks [he] is unable to perform specific duties at his workplace.  Advised [him] to leave area during attack, then may return to full duty following attack."

On December 15, D'Arezzo requested a meeting to discuss the situation; at that meeting, he asked United Stationers to make changes so that he would not have to see Ms. O at work.  D'Arezzo suggested that United Stationers change Ms. O's schedule or department, but United Stationers did not believe that change was appropriate.  Instead, United Stationers asked D'Arezzo if he wanted to change his shift or to switch to the Bulk Department on the first floor;[3] these changes were the only way to ensure that he would not encounter Ms. O.  D'Arezzo admits that he declined both of these options, and as a result, he continued to work the same overlapping shift in the Shelf Department.

Between the November incident and June 2007, D'Arezzo encountered Ms. O at work more than six times.  On one occasion, D'Arezzo saw Ms. O coming down the aisle of the Shelf Department and he "had to basically squish up against the conveyer until [he] felt her footsteps pass [him]."  Whenever D'Arezzo saw Ms. O, he experienced panic attacks and anxiety, which caused him to

---

[3] Although D'Arezzo's memorandum contends "[t]here were no offers of moving to a different department," that characterization is unsupported by the Record.  First, D'Arezzo testified that United Stationers asked if he could change his hours or shift to avoid interaction with Ms. O, but he turned down that offer.  He later stated that he did not recall if United Stationers "offered" to change his department, "or if they may have said something like, 'Would you want us to change your department?'"  Despite United Stationers' suggested or offered accommodation, D'Arezzo once again confirmed that he "did not want them to do that," and he wanted to continue working in the Shelf Department.

stutter, shake, feel dizzy, and have watery eyes.  He does not experience these symptoms around any other employees, and never suffered from anxiety before the incident on November 10, 2006. D'Arezzo has not been treated with anxiety medication.

### D. D'Arezzo's Refusal to Work with Ms. O

In early June 2007, D'Arezzo refused to work in a certain location because Ms. O would be in his line of vision, and complained that he should not be required to work near her.  At United Stationers, an employee's refusal to work where assigned is considered insubordination, which subjects the employee to discipline, including termination.

United Stationers thoroughly reviewed D'Arezzo's concerns and his refusal to work near Ms. O.  On July 16, 2007, D'Arezzo met with Warren Jennings, General Operations Manager of the Woburn Distribution Center, and David Brecher, Area Human Resources Manager.  They told D'Arezzo that he must be able to work with and around all co-workers.  Because Ms. O and D'Arezzo had overlapping shifts in the same department, it was impossible to prevent him from encountering or working near Ms. O.  D'Arezzo was advised that he could keep his current schedule only if he could work with and around all co-workers, including Ms. O. Other possibilities discussed included changing D'Arezzo's hours and department or taking a leave under the Family and Medical Leave Act ("FMLA").

D'Arezzo refused to change his schedule or department, and insisted that Ms. O should be required to make those changes.

Notwithstanding the alternatives discussed, D'Arezzo claims that United Stationers failed to offer any work schedules that would ensure that he would not interact with Ms. O. As a result, D'Arezzo argues he was "forced" to take a FMLA leave. He requested in writing to work less than a full shift – from 1:30pm to 7:30pm – to eliminate the overlap with Ms. O's shift. D'Arezzo's note stated, "I am requesting intermittent leave for the hours of 11am - 1:30pm Monday - Friday for the following reason: I am not able to function at 100% around another assoaite who's [sic] schedule overlaps these hours."

United Stationers asked D'Arezzo to obtain medical support for his leave request and gave him a FMLA medical certification form to be completed. In the interim, D'Arezzo was not immediately returned to work because he was unwilling to work with and around all co-workers, and the medical certification of the need for intermittent leave was not yet complete. However, he was told that his job would be held for him.

On July 18, 2007, Paquette, D'Arezzo's nurse practitioner, completed the FMLA form, stating that D'Arezzo "is not able to work at full capacity when required to work with a certain co-worker," which causes increased panic attacks and anxiety. Therefore, Paquette recommended that D'Arezzo continue to work

but at a reduced schedule to ensure there is no interaction with that co-worker.  D'Arezzo signed and faxed the completed FMLA form to United Stationers on July 27, 2007.  He waited to return the form until he retained an attorney, Charles Gould.

United Stationers received the completed form on July 30, 2007, and informed D'Arezzo the next day by letter that his FMLA leave was provisionally accepted.  D'Arezzo was paid for August 1 and returned to work on August 2.  He worked reduced hours from 1:30pm to 7:30pm in the Shelf Department until January 2009.

### E. D'Arezzo Returns to a Full Shift

In January 2009, D'Arezzo's department and shift changed due to a restructuring unrelated to him, in which positions were eliminated and less senior employees were "bumped" from desired shifts.  When D'Arezzo was bumped from his shift in the Shelf Department, he selected the 1:30pm to 10:00pm shift in the Bulk Department to avoid overlapping with Ms. O.  Since he began working in the Bulk Department, D'Arezzo has not encountered Ms. O.  There is no contention that the restructuring and bump were retaliatory.

When D'Arezzo selected that shift in the Bulk Department, United Stationers asked him for medical certification of his ability to resume a full shift.  D'Arezzo was unwilling to provide the certification and explained that the reduced shift was only necessary to avoid encountering Ms. O.  Based on that

9

explanation, United Stationers permitted D'Arezzo to return to work full-time without the certification.  Since returning to full duty, D'Arezzo was offered and worked overtime.  By contrast, he neither requested nor was he asked to work overtime when he was working reduced hours, in accordance with his FMLA leave.

## F. Procedural History

On May 5, 2008, D'Arezzo filed a charge of disability discrimination with the Massachusetts Commission Against Discrimination ("MCAD") in connection with the incident with Ms. O and his subsequent anxiety.[4]  On December 8, 2008, D'Arezzo brought the case now before me against United Stationers under Massachusetts General Laws ch. 151B.

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  "An issue is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nomoving party.'"  *Chadwick v. WellPoint, Inc.*, 561 F.3d 38, 43

---

[4] It appears from the Record that D'Arezzo also filed a charge of discrimination with the federal Equal Employment Opportunity Commission ("EEOC") on May 16, 2008.  That charge is irrelevant to this case which was brought only under Massachusetts law.

(1st Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A fact is "material" if it might affect the outcome of the case.  *Anderson*, 477 U.S. at 248.

When a court evaluates a summary judgment motion, the record is viewed in the light most favorable to the nonmoving party and all reasonable inferences are drawn in his favor.  *Chadwick*, 561 F.3d at 43.  "Importantly, the nonmoving party 'may not rest upon mere allegation . . . but must set forth specific facts showing that there is a genuine issue for trial.'"  *Braga v. Hodgson*, 605 F.3d 58, 60 (1st Cir. 2010) (quoting *Anderson*, 477 U.S. at 256).

## III. DISCUSSION

I evaluate each of D'Arezzo's claims under Massachusetts law[5] because D'Arezzo's complaint does not include claims under federal law.  It is the practice of the Supreme Judicial Court of Massachusetts, never the less, to "apply Federal case law that construes Federal antidiscrimination statutes in interpreting [Chapter] 151B . . . ."  *Brown v. F.L. Roberts & Co.*, 896 N.E.2d 1279, 1285 (Mass. 2008) (citing *Wheatley v. Am. Tel. & Tel. Co.*, 636 N.E.2d 265, 268 (Mass. 1994)).

---

[5] In a diversity case, where "[a]ll parties cite to Massachusetts case law to support their claims . . . [t]his Court need inquire no further into choice of law." *Peabody Essex Museum, Inc. v. U.S. Fire Ins. Co.*, 623 F. Supp. 2d 98, 106 (D. Mass. 2009); *see also Hershey v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 317 F.3d 16, 20 (1st Cir. 2003) (permitting courts to forego an independent choice of law analysis and accept parties' agreed-upon choice of the governing law).

## A. Statute of Limitations

As a threshold matter, I must decide whether D'Arezzo's claims under Chapter 151B are time-barred.  An employee asserting violations of Chapter 151B must file a charge of discrimination with MCAD "within 300 days after the alleged act of discrimination."  M.G.L. ch. 151B § 5.  "By the plain language of the statute, the limitations period begins to run at the time of the 'act of discrimination.'"  *Ocean Spray Cranberries, Inc. v. Mass. Comm'n Against Discrimination*, 808 N.E.2d 257, 265 (Mass. 2004).

D'Arezzo filed a charge with MCAD on May 5, 2008.  The 300-day statute of limitations precludes D'Arezzo from filing charges based on discriminatory acts occurring after July 10, 2007. D'Arezzo ignores this timing issue in his briefing, and United Stationers argues that only D'Arezzo's hostile environment claim is time-barred.  In the interest of completeness and to provide full context, I consider whether any claim is based on United Stationers' conduct before July 10, 2007.

Count One is premised on United Stationers' alleged failure to accommodate D'Arezzo's disability.  D'Arezzo met with two managers on July 16, 2007 to discuss ways to prevent him from encountering Ms. O.  D'Arezzo argues that he was "forced" to take an FMLA leave at that meeting, which occurred after July 10, 2007, and therefore is not time-barred.

Count Two arises from D'Arezzo's contention that United Stationers retaliated against him by changing his schedule and by denying him overtime opportunities.  D'Arezzo changed to a reduced schedule on August 2, 2007, and did not work overtime until he returned to full duty in January 2009.  That time frame is within the statute of limitations, and accordingly Count Two is actionable.

Count Three asserts that Ms. O's "assault and verbal threats created a hostile work environment for Mr. D'Arezzo which United Stationers permitted to exist."  United Stationers argues that this claim is time-barred because that incident occurred on November 10, 2006, which falls outside the applicable limitations period.  While the November 10, 2006 incident is clearly outside the relevant time period, Massachusetts recognizes a "continuing violation" exception to the 300-day limitations period, pursuant to which "the 300 day requirement shall not be a bar to filing in those instances where facts are alleged which indicate that the unlawful conduct complained of is of a continuing nature . . . ." 804 CODE MASS. REGS. § 1.10(2); *see also Ocean Spray*, 808 N.E.2d at 266 ("This exception for violations of a continuing nature 'recognizes that some claims of discrimination involve a series of related events that have to be viewed in their totality in order to assess adequately their discriminatory nature and

impact.'" (quoting *Cuddyer v. Stop & Shop Supermarket Co.*, 750 N.E.2d 928, 936 (Mass. 2001))).

D'Arezzo neither asserts the continuing violation exception to rebut United Stationers' statute of limitations argument, nor alleges a single instance, after July 10, 2007, in which he faced a hostile environment.  He simply states that he "had several encounters with Ms. O that triggered anxiety and panic attacks," but does not specify whether these sightings of Ms. O occurred within the limitations period.  Therefore, I conclude that Count Three is time-barred and award judgment to United Stationers on the hostile environment claim.[6]

---

[6] Even if the hostile environment claim is not time-barred (which it is), D'Arezzo cannot establish a hostile environment by alleging a single confrontation with Ms. O.  "[H]ostile environment discrimination typically is not confined to one act, directed at one individual, one time; rather, it is a composite of workplace action and inaction." *Ruffino v. State Street Bank & Trust Co.*, 908 F. Supp. 1019, 1038 (D. Mass. 1995); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (concluding that "'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" (internal citation omitted)).

The "encounters" that D'Arezzo describes are only a handful of sightings of Ms. O.  He concedes that, after the November 10, 2006 incident, he never spoke with Ms. O again.  The mere sight of a co-worker, without any allegation of a discriminatory act, is not "sufficiently severe or pervasive" to constitute a hostile environment.  *See Quiles-Quiles v. Henderson*, 439 F.3d 1, 7 (1st Cir. 2006) ("To establish a hostile work environment" based on a mental impairment, the plaintiff must "show that his workplace was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment." (citation and alterations omitted)).

**B. Failure to Accommodate (Count I)**

It is unlawful under Massachusetts law "[f]or any employer . . . to . . . discriminate against, because of his handicap, any person alleging to be a qualified handicapped person, capable of performing the essential functions of the position involved with reasonable accommodation . . . ." M.G.L. ch. 151B § 4(16).  An employer's "failure to provide a reasonable accommodation constitutes discrimination under § 4(16)." *Ocean Spray*, 808 N.E.2d at 270 n.19.

D'Arezzo alleges his disability is "severe anxiety whenever [Ms. O] is present," and that United Stationers failed to offer him a reasonable accommodation despite his repeated requests. First, I must determine whether the protections of Chapter 151B extend to D'Arezzo, and if so, whether United Stationers discriminated against him because of that handicap. *Ocean Spray*, 808 N.E.2d at 270.

1. Handicap

Chapter 151B defines the term "handicap" as: "(a) a physical or mental impairment which substantially limits one or more major life activities of a person; (b) a record of having such impairment; or (c) being regarded as having such impairment. . . ." M.G.L. ch. 151B § 1(17).  "Major life activities" are "functions, including, but not limited to, caring for one's self, performing

manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." *Id.* at § 1(20).

Merely submitting evidence of a medical diagnosis of an impairment is insufficient to trigger the protections of Chapter 151B. *City of New Bedford v. Mass. Comm'n Against Discrimination*, 799 N.E.2d 578, 589 (Mass. 2003). Rather, pursuant to Chapter 151B, "[t]he determination of whether an impairment substantially limits a major life activity depends on the nature and severity of the impairment, the duration or expected duration of the impairment, and the permanent or long-term impact of the impairment." MASS. COMM'N AGAINST DISCRIMINATION GUIDELINES: EMPLOYMENT DISCRIMINATION ON THE BASIS OF HANDICAP ("MCAD Guidelines"), § II.A.6, *at* http://www.mass.gov/mcad/disability1a.html. Furthermore, "[a]n impairment substantially limits an individual's ability to work if it prevents or significantly restricts the individual from performing a class of jobs or a broad range of jobs in various classes." *Id.*

It is undisputed that D'Arezzo suffered panic attacks and anxiety in the presence of Ms. O, and that he experienced symptoms such as stuttering, shaking, and dizziness. On December 1, 2006, D'Arezzo's healthcare provider diagnosed him with "anxiety related to a co-worker at work," but indicated that he "may return to full duty following [an anxiety] attack." That

16

D'Arezzo could complete his work duties and function normally outside the presence of Ms. O undermines the notion that his anxiety substantially limited any major life activities.  *See* M.G.L. ch. 151B § 1(17).  His anxiety, which abated once he stopped seeing Ms. O, is not permanent or long-term; nor does it prevent or significantly restrict him from performing a class of jobs, as evidenced by his total ability to do exactly the same job outside Ms. O's presence and to work a full shift in the Bulk Department since January 2009.  *Cf. Ocean Spray*, 808 N.E.2d at 265 (concluding that the "inability to perform a 'single, particular job' does not suffice to establish that he is substantially limited in the major life activity of working.").  Absent from D'Arezzo's opposition memorandum is any argument that his inability to work around Ms. O constitutes a handicap.  I therefore conclude that D'Arezzo does not suffer from a handicap within the meaning of Chapter 151B.

2. Reasonable Accommodation

Because D'Arezzo cannot establish he had a handicap within the meaning of § 1(17), United Stationers had no obligation to provide a reasonable accommodation for him.  *See Bryant v. Caritas Norwood Hosp.*, 345 F. Supp. 2d 155, 168 (D. Mass. 2004).  For completeness of analysis, however, I will explore whether United Stationers discriminated against D'Arezzo by failing to provide a reasonable accommodation.

17

A "reasonable accommodation" is "any adjustment or modification to a job (or the way a job is done), employment practice, or work environment that makes it possible for a handicapped individual to perform the essential functions of the position involved and to enjoy equal terms, conditions and benefits of employment." *Ocean Spray*, 808 N.E.2d at 270 (quoting MCAD Guidelines, *supra*, at § II.C). Massachusetts law recognizes that "the employer need not provide the best accommodation available, or the accommodation specifically requested by the individual with the handicap. Rather, the employer must provide an accommodation (at its own expense) that is effective for its purpose." MCAD Guidelines, *supra*, at § II.C.

On July 16, 2007, D'Arezzo met with his managers to discuss possible accommodations to prevent him from encountering Ms. O. D'Arezzo argues that he asked United Stationers to change his work schedule or to relocate him and Ms. O so they did not work in the same area; by declining to do so, he contends, United Stationers failed to provide a reasonable accommodation. However, D'Arezzo's argument is contradicted by his testimony that United Stationers did, in fact, suggest that he change his department or shift to prevent any interaction with Ms. O, and that he turned down that offer. That United Stationers declined to implement D'Arezzo's suggestion to change Ms. O's hours or department is of no consequence, so long as United Stationers

provided an accommodation that made it possible for him to
perform the essential functions of his job. *See* MCAD Guidelines,
*supra*, at § II.C; *Bryant*, 345 F. Supp. 2d at 168 (holding an
employee's rejection of a reasonable accommodation offered by her
employer precludes recovery under federal law for employer's
alleged failure to reasonably accommodate her disability.

Once D'Arezzo declined accommodations to his shift and
department, United Stationers suggested a reduced schedule under
the FMLA, which eliminated the overlap with Ms. O's shift, and he
accepted that accommodation.  A leave of absence is recognized by
Massachusetts law as a reasonable accommodation in certain cases.
*Fiumara v. President & Fellows of Harvard Coll.*, 526 F. Supp. 2d
150, 157 (D. Mass. 2007) (citing *Russell v. Cooley Dickinson
Hosp., Inc.*, 772 N.E.2d 1054, 1064 (Mass. 2002)).  Any suggestion
that D'Arezzo was "forced" to adopt a reduced schedule is
untenable, in light of his admission that he was unwilling to
accept a different department or shift, both of which entailed a
full schedule.  I conclude that, even had D'Arezzo's anxiety
constituted a handicap under Massachusetts law, United
Stationers' accommodation was reasonable under the circumstances.
As a result, D'Arezzo's claim for failure to accommodate fails as
a matter of law.

**C. Retaliation (Count II)**

D'Arezzo also alleges that United Stationers retaliated

against him by refusing to allow him to work overtime based on his request for accommodation and the fact that he reported Ms. O's assault to Human Resources.[7]  (Compl. ¶¶ 14-26.)  He contends that before his encounter with Ms. O, he regularly worked overtime and sometimes overtime was mandatory.

To establish a prima facie case for retaliation, D'Arezzo must show that: (1) "he engaged in protected conduct," (2) "he suffered some adverse action," and (3) "'a causal connection existed between the protected conduct and the adverse action.'" *Mole v. Univ. of Mass.*, 814 N.E.2d 329, 338-39 (Mass. 2004) (quoting *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 827 (1st Cir. 1991)).  Protected conduct includes opposing any practice forbidden under Chapter 151B or filing a complaint with MCAD. *Id.* at 338 n.13 (citing M.G.L. ch. 151B, § 4).  Adverse actions may consist of "a discrete and identifiable adverse employment decision (e.g., a discharge or demotion)" or "a continuing pattern of behavior that is, by its insidious nature, linked to the very acts that make up a claim of hostile work environment."

_____

[7] In addition, D'Arezzo alleges in his complaint that United Stationers retaliated against him through a change of schedule and loss of income (Compl. ¶ 25), but does not address these alleged retaliatory acts in his opposition memorandum.  As discussed above, D'Arezzo admits that United Stationers offered – and he rejected – other possible accommodations that permitted him to maintain a full-time schedule, and therefore he cannot establish retaliation on this basis.  Similarly, D'Arezzo cannot credibly contend that the loss of hourly wages, resulting from the two-and-a-half hour reduction in his schedule that *he requested*, was retaliatory.

*Clifton v. Mass. Bay Transp. Auth.*, 839 N.E.2d 314, 318 (Mass. 2005); *see also* M.G.L. ch. 151B § 4(4) (making it unlawful "to discharge, expel or otherwise discriminate against any person because he has opposed any practices forbidden" under Chapter 151B).

I examine whether D'Arezzo can satisfy the requisite prongs of the retaliation inquiry.  First, he engaged in protected conduct when he requested an accommodation for his alleged handicap.[8] *Carreras v. Sajo, García & Partners*, 596 F.3d 25, 35-36 (1st Cir. 2010) (citing *Wright v. CompUSA, Inc.*, 352 F.3d 472, 477-78 (1st Cir. 2003)); *see also Gauthier v. Sunhealth Specialty Servs., Inc.*, 555 F. Supp. 2d 227, 244 (D. Mass. 2008) (concluding plaintiff "engage[d] in protected conduct under Massachusetts law when she requested accommodations" for her disability).

Second, the denial of overtime opportunities is considered an adverse employment action.  *See Allder v. Daniel O'Connell's Sons*, 20 F. Supp. 2d 210, 219 (D. Mass. 1998) (finding the denial of an opportunity to choose overtime shifts was an adverse employment action that could be causally connected to the

---

[8] D'Arezzo's report of Ms. O's alleged assault to Human Resources does not constitute protected activity, i.e. opposing a practice forbidden under Chapter 151B, because there is no indication that Ms. O's attack had discriminatory roots related to D'Arezzo's handicap (anxiety).  Furthermore, the November 10, 2006 incident preceded the onset of his anxiety, and consequently could not have been the basis of her attack.

employee's complaints of discrimination); *see generally Sensing v. Outback Steakhouse of Florida, LLC*, 575 F.3d 145, 157 (1st Cir. 2009) ("defining an adverse employment action" as "any material disadvantage[] in respect to salary, grade, or other objective terms and conditions of employment" (citation omitted)).  While D'Arezzo admits that he never requested overtime after he adopted a reduced schedule, it is undisputed that he did not work overtime between August 2, 2007 and January 2009.

Even assuming D'Arezzo can prove the first two elements, his retaliation claim must fail because he cannot show a causal connection between his request for an accommodation and any purported denial of overtime.  He declined United Stationers' suggested accommodations of either (1) a full-time schedule in a different department, or (2) a full-time schedule during a different shift; both full-time schedules would have entailed opportunities for overtime.  Critically, the very accommodation requested by D'Arezzo was to keep his 11:00am to 7:30pm shift, but to take a FMLA leave during the two-and-a-half hour overlap with Ms. O's shift.  D'Arezzo's health care provider expressly recommended that he work a "reduced schedule" from 1:30pm to 7:30pm because he "is not able to work at full capacity when required to work with a certain co-worker."

United Stationers therefore could not have asked D'Arezzo to work a full-time schedule, let alone overtime, without entirely

22

disregarding the requested accommodation for his anxiety.  As United Stationers succinctly explains, D'Arezzo "cannot now claim that [accommodation] was retaliatory when he requested it."  Once D'Arezzo resumed a full-time shift in January 2009, United Stationers let him work overtime.  Thus, there is no evidence that United Stationers retaliated against D'Arezzo by declining to offer him overtime opportunities after accommodating him with a reduced schedule.

## IV. CONCLUSION

For the reasons set forth more fully above, I GRANT the Defendant's motion (Doc. No. 17) for summary judgment on the complaint in its entirety.

> **/s/ Douglas P. Woodlock**
> DOUGLAS P. WOODLOCK
> UNITED STATES DISTRICT JUDGE